# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **H.M., H.G., and R.G.**

**No. 19-0442** (Wood County 18-JA-84, 18-JA-85, and 18-JA-178)

## MEMORANDUM DECISION

Petitioner Mother J.D., by counsel Heather L. Starcher, appeals the Circuit Court of Wood County's March 27, 2019, order terminating her parental rights to H.M., H.G., and R.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Ernest M. Douglas, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her on the initial petition as an abusing parent, (2) adjudicating her on the amended petition as an abusing parent, (3) denying her a post-adjudicatory improvement period, and (4) terminating her parental rights and failing to consider a less-restrictive disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed an abuse and neglect petition in regard to two children: H.M. and H.G.[2] In its petition, the DHHR alleged that petitioner failed to provide adequate food, clothing, and shelter to the children and physically and emotionally abused H.M. The DHHR also alleged that petitioner and the two children were living in a camper that was being supplied electricity via the neighbor's garage and had no water or toilet. The DHHR further alleged that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The DHHR later amended its petition to include petitioner's child, R.G., who is discussed in detail below.

1

petitioner kicked H.M. in the head, attempted to suffocate her with a pillow, and called her a whore. Following the petition's filing, petitioner waived her preliminary hearing.

In August of 2018, the circuit court held an adjudicatory hearing. The circuit court heard testimony from the principal at the children's school, the school nurse, a Child Protective Services ("CPS") worker, and petitioner. Additionally, the DHHR admitted into evidence the children's forensic interviews and a picture that depicted bruising around H.M.'s right eye. Both the principal and the school nurse described the children as being in need of clothing and personal hygiene items, such as toothpaste and deodorant. They further testified that both children presented at school with dirty clothes, often wearing the same outfit for three consecutive days, and had chronic problems with head lice. The principal also testified that the children were often without stable housing. In regard to petitioner's physical abuse of H.M., the CPS worker testified that he observed a bruise and abrasion on H.M.'s right eyelid that she disclosed was caused when petitioner kicked her in the head. The CPS worker further testified that H.M. disclosed to him that petitioner attempted to suffocate her with her hand and a pillow. Petitioner also testified at the hearing and denied that her children were without food, clothing, and proper shelter and that she physically and emotionally abused H.M. Petitioner also testified that she had another child, R.G., whose father had primary custody of him. Petitioner further testified that she had weekly, supervised visits with R.G. at his father's home pursuant to a parenting plan. After hearing the testimony presented, the circuit court took the matter under advisement in order to watch the children's forensic interviews before issuing a ruling.

On September 13, 2018, the circuit court entered an adjudicatory order. Based on the evidence and testimony presented at the adjudicatory hearing, the circuit court found that petitioner physically and emotionally abused H.M. and "[H.G.] was a child dwelling in the same residence . . . when the abuse of [H.M.] occurred." The circuit court further found that petitioner neglected both children by "fail[ing] to provide them with adequate clothing, food, shelter, the means of personal hygiene[,] or a safe, secure environment, which failure was not due primarily to a lack of financial means." Accordingly, the circuit court found that petitioner abused and neglected the children. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period.

In October of 2018, the DHHR filed an amended abuse and neglect petition to include petitioner's child, R.G. In November of 2018, the circuit court held an adjudicatory hearing on the amended petition regarding R.G. The circuit court heard testimony from R.G.'s father, a CPS worker, and petitioner. R.G.'s father testified that petitioner exercised unsupervised visitation with the child until October 29, 2018, when the DHHR informed him to stop the visits. He further testified that the visits included overnights, and at least one overnight visit occurred in petitioner's camper where H.M. was physically and emotionally abused. Petitioner contradicted the previous testimony she gave at the August 2018 adjudicatory hearing and admitted that her visits with R.G. had been unsupervised. Based on the evidence presented, the circuit court found that petitioner abused and neglected R.G. because he had, albeit minimally, resided with petitioner in her home at the same time as his siblings.

In December of 2018, the circuit court held a hearing on petitioner's motion for a post-adjudicatory improvement period and a dispositional hearing. The circuit court heard testimony from petitioner and her witness. Petitioner testified that she abused and neglected her children,

H.M. and H.G., by having untreated mental health issues and having inadequate housing. However, petitioner denied that she physically and emotionally abused H.M. and that her children went to school hungry and in dirty clothes. Petitioner further testified that she admitted to posting on social media regarding the case, and she accused H.M. of lying about the abuse. Petitioner also testified that the school principal lied regarding her children coming to school hungry and in dirty clothes. Petitioner further admitted to using methamphetamine prior to and during the proceedings. Petitioner's witness testified that he believed petitioner would comply with an improvement period. The witness also testified that he was aware that petitioner used illegal substances and witnessed her using marijuana in the home while her children were present. After hearing the testimony presented, the circuit court held its ruling in abeyance and ordered petitioner to be screened for controlled substances immediately after the hearing and to continue screening at the Day Report Center.

On March 27, 2019, the circuit court entered a final dispositional order, which also addressed petitioner's motion for a post-adjudicatory improvement period. The circuit court made findings that petitioner denied that she physically abused H.M., that her children were not adequately fed, and that they went to school in dirty clothing. The circuit court also found that petitioner admitted to using methamphetamine prior to and during the proceedings. The circuit court further found that petitioner failed to submit to a drug screen on December 11, 2018, and tested positive for methamphetamine and THC on December 14, 2018. Based on petitioner's failure to acknowledge her abuse and neglect, the circuit court denied her motion for a post-adjudicatory improvement period. Furthermore, the circuit court found that petitioner was unable and unwilling to provide for her children's needs and there was no reasonable likelihood that the conditions of her neglect and abuse could be substantially corrected in the near future. As such, the circuit court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]According to respondents, the permanency plan for H.M. and H.G. is adoption by their current foster family, pending the family home study. The permanency plan for R.G. is to remain in the custody of his nonabusing father. The children are seeing each other regularly.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first alleges that the circuit court erred in adjudicating her on the initial petition based upon insufficient evidence that she abused and neglected her children, H.M. and H.G. Specifically, petitioner argues that the DHHR presented no direct evidence corroborating the allegations in the petition or the reports of the children. Petitioner further argues that the circuit's court finding of abuse and neglect was clearly erroneous given her testimony that she did not hit H.M. and both children had plenty of food to eat and clothes to wear.[4] We find petitioner's arguments to be without merit.

We have previously noted as follows:

> "[W. Va. Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 3, *In re F.S.*, 233 W. Va. 538, 539, 759 S.E.2d 769, 770 (2014). Further, this Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id*. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201 (2018), an abused child is one whose health or welfare is harmed or threatened by "[a] parent . . . who knowingly or intentionally inflicts . . . physical injury . . . upon the child or another child in the home." Further, a

> "[n]eglected child" means a child . . . [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

*Id.* Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. Contrary to petitioner's assertion, the DHHR presented evidence that supported the allegations in the petition when it admitted into evidence a photograph that depicted bruising around H.M.'s right eye and the forensic interviews of the children, which the circuit court found

---

[4]Petitioner further argues that the circuit court erred in finding she abused and neglected her children given her witness's testimony that he had seen the children's clothes in the cabinets of the camper and that he and petitioner would fix food for the children. However, this witness testified at the dispositional hearing, not the adjudicatory hearing.

4

to be credible. Furthermore, the testimony provided by the CPS worker clearly established that H.M. disclosed that petitioner kicked her in the eye and attempted to suffocate her with a pillow. Additionally, the testimony that was presented by the school principal and school nurse proved that the children lacked stable housing, adequate personal hygiene items, food, and clean clothing. The circuit court found that H.M.'s description of her abuse and neglect was corroborated by this testimony and by the photograph that depicted bruising around her eye. As such, the record clearly contains sufficient evidence to adjudicate petitioner as having abused and neglected H.M. and H.G. under the definitions contained in West Virginia Code § 49-1-201.

Moreover, petitioner's argument that there was insufficient evidence to adjudicate her as an abusing parent given her testimony is entirely based upon the circuit court's assessment of the credibility of witnesses. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (citations omitted). During the proceedings below, the circuit court weighed all of the testimony presented and determined that petitioner's testimony "was not credible or persuasive." Accordingly, we decline to reassess the circuit court's credibility determinations and find that it properly adjudicated petitioner as an abusing parent based upon the evidence and testimony presented.

Petitioner next argues that the circuit court erred in adjudicating her on the amended petition, as there was insufficient evidence in the initial petition to support a finding that she was an abusing parent. Additionally, petitioner argues that the circuit court erred in finding that the child, R.G., was "similarly situated" to his siblings because petitioner did not have residential custody of him. She further argues that this finding was clearly erroneous given R.G.'s father's testimony that petitioner never abused or neglected R.G., and he had no issues with her taking care of him. As explained in detail above, we find that the record in this matter is clear that sufficient evidence existed to adjudicate petitioner as an abusing parent on the initial petition. To the extent that petitioner asserts that the circuit court erred in finding that the child, R.G., was similarly situated to his siblings, we find this argument to be unfounded. As noted above, West Virginia Code § 49-1-201 defines an abused child as follows:

"Abused child" means . . . [a] child whose health or welfare is being harmed or threatened by . . . [a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or *another child in the home*.

(Emphasis added). Further, this Court has held that

[w]here there is clear and convincing evidence that a child has suffered physical . . . abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical . . . abuse but is at risk of being abused is an abused child under [West Virginia Code § 49-1-201].

Syl. Pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995); *see also* Syl. Pt. 4, *State ex rel. W. Va. Dep't of Health and Human Res. v. Fox*, 218 W. Va. 397, 624 S.E.2d 834 (2005). Here, the testimony of both petitioner and R.G.'s father clearly established that R.G. resided in

petitioner's home during the time his siblings were abused. While petitioner relies on the fact that she did not have residential custody of R.G. during this time, the record established that she was exercising unsupervised visitation with him, including overnight visitation, prior to and throughout the duration of these proceedings. R.G.'s father testified that petitioner had unsupervised, overnight visitation with R.G. while his siblings were still in her care. R.G.'s father further testified that at least one of these visits occurred in the same home where R.G.'s siblings were abused. Petitioner also admitted in her testimony that these visits took place. Although petitioner asserts that R.G.'s father testified that she had never abused or neglected R.G., this does not change the fact that R.G. meets the definition of an abused child under West Virginia Code § 49-1-201. Given that the testimony clearly established that R.G. had been in the home with petitioner and his siblings, the circuit court's finding that R.G. was also an abused child was not erroneous.

Petitioner next argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. Petitioner asserts that she was entitled to an improvement period because she admitted to some allegations in the petition and testified that she would participate in an improvement period. Petitioner further argues that she was entitled to an improvement period based on her participation in services. Upon review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (quoting *In re Emily,* 208 W. Va. 325, 344, 540 S.E.2d 542, 551 (2000)). However,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, the circuit court correctly found that petitioner "lack[ed] insight into her behaviors and the circumstances of her children." While petitioner asserts in her brief that she was actively participating in parenting classes and "learning a lot," she fails to mention that she screened positive for methamphetamines and THC after she testified that she stopped using controlled substances. Similarly, though petitioner testified that she abused and neglected her children by having untreated mental health issues and inadequate housing, petitioner adamantly denied physically abusing H.M. and failing to provide her children with adequate food, clothing, and means of personal hygiene. Specifically, petitioner testified that H.M. lied in her account of the physical abuse and that the school principal lied regarding her children coming to school hungry and in dirty clothing. Based on petitioner's failure to acknowledge the truth of these basic allegations, we agree with the circuit court that granting her

6

an improvement period would have been futile. Accordingly, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Lastly, petitioner argues that the circuit court erred in terminating her parental rights and failing to consider a less-restrictive disposition.[5] Petitioner argues that termination of her custodial rights would have been more appropriate given the age of her children and that R.G. was already in the custody of his father. We find no error in the termination of petitioner's parental rights, as opposed to a less-restrictive disposition, given that the circuit court found there was no reasonable likelihood petitioner could substantially correct the conditions of her neglect and abuse and that termination was necessary for the children's welfare, as required by West Virginia Code § 49-4-604(b)(6) (2019). Pursuant to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As set forth above, petitioner failed to fully acknowledge the conditions of abuse and neglect, thereby making them untreatable.

---

[5]In support of this assignment of error, petitioner briefly asserts that the circuit court erred in failing to consider the wishes of H.M. and H.G. to have post-termination visitation with her, despite them being under the age of fourteen. We note, however, that petitioner has not set forth a separate assignment of error regarding the consideration of the children's wishes or post-termination visitation. Pursuant to Rule 10(c)(3) of the West Virginia Rules of Appellate Procedure, a petitioner's brief must contain a "list of the assignments of error that are presented for review, expressed in terms and circumstances of the case." Additionally, petitioner fails to cite any authority on post-termination visitation or consideration of the children's wishes. Rule 10(c)(7) requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Accordingly, we decline to address this issue because petitioner's passing reference to it fails to comply with the applicable rules regarding appellate briefs.

Accordingly, we find no error in the circuit court's findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect or that termination was necessary for the children's welfare. Based on these findings, termination of petitioner's parental rights, as opposed to a less-restrictive dispositional alternative, was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 27, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 17, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison